**ST. JOSEPH COUNTY; St. Joseph County Commissioners; St. Joseph County Auditor, Eugene Basker; St. Joseph County Treasurer, Aloysius J. Kromkowski; and Aetna Insurance Life and Casualty Insurance Company, Defendants-Appellants,**

v.

**Philip WILMES and Barbara Wilmes, Plaintiffs-Appellees.**

**No. 3–681A157.**

Court of Appeals of Indiana, Third District.

Nov. 30, 1981.

Daniel H. Pfeifer, Sweeney, Butler & Simeri, South Bend, for defendants-appellants.

Paul James Newman, South Bend, for plaintiffs-appellees.

HOFFMAN, Presiding Judge.

St. Joseph County et al. appeal a summary judgment in favor of Philip and Barbara Wilmes. The two issues preserved for appeal are:

(1) whether the trial court erred in excluding certain evidence and

(2) whether the trial court applied the correct measure of damages.

The record and briefs show that, in 1973, a forty-two acre parcel of land, which is the subject matter of this dispute, was owned by Mr. and Mrs. Charles Oberlin. Sometime in 1973 the Oberlins conveyed a small portion of this land to Elmer Boocher. In December 1973 Mr. Boocher conveyed his parcel of land to Mr. and Mrs. Bowersox. Mr. Boocher agreed to pay all real estate taxes for 1973 due and payable in 1974.

In 1975 the St. Joseph County Auditor's Office mailed a notice to Mr. and Mrs. Oberlin indicating that the taxes on their real estate for the year 1973 were delinquent. On November 30, 1975 Mr. Oberlin paid the delinquent taxes. Through inadvertence however, this payment was not entered in the computer which is utilized by the Auditor's Office. As a result, the computer showed that the taxes on Mr. Oberlin's parcel of land were delinquent. The computer also showed that the taxes on the parcel which Oberlin conveyed to Boocher were delinquent. Relying on the computer printout, the Auditor listed the property for a tax sale in August 1976.

On August 9, 1976 Mr. and Mrs. Wilmes purchased the real estate at the tax sale. The Treasurer executed his guarantee and the Auditor executed the certificate of sale on August 11, 1976. The Wilmes did not receive the certificate or the guarantee until October 29, 1976. After the tax sale the Auditor's Office sent notice to the Oberlins and the First Bank and Trust Company of South Bend, a lienholder, indicating that a delinquency existed, providing them an opportunity to redeem the property. First National Bank contacted Boocher about the delinquency, and he submitted his proportionate share of the taxes to the Treasurer's Office. Oberlin went to the Treasurer's Office and demonstrated that he had paid all of the taxes which were allegedly delinquent and that in fact, no delinquency existed at the time of the tax sale. Due to the fact that Mr. Oberlin had previously paid the taxes for the entire parcel of land, the amount of Mr. Boocher's payment was returned to the First Bank and Trust Company.

The Auditor's Office contacted the Wilmes approximately three weeks after the land was sold and advised them that the tax sale was invalid. The Auditor's Office also indicated that the purchase price plus interest would be returned to the Wilmes. The Wilmes refused the payment however. On August 9, 1978 the Wilmes applied for a deed to the property and upon being denied the deed, brought an action against the County.

The trial court found that the provisions of IC 1971, 6–1.1–24–11 (Burns 1978 Repl.) prohibited any evidence that would rebut the regularity and validity of the tax sale. The trial court granted summary judgment

in favor of the Wilmes and ordered St. Joseph County to pay $1,625.78 plus interest to the Wilmes. The trial court computed the award on the basis of IC 1971, 6–1.1–24–10(b) which provides for a measure of damages which is double the amount paid by the holder of the certificate of sale.

IC 1971, 6–1.1–24–11 provides:

"(a) A certificate of sale issued under section 9 [6–1.1–24–9] of this chapter is presumptive evidence of: (1) The truth of the statements contained in the certificate; (2) The interest of the purchaser in the real property described in the certificate; (3) The regularity and validity of all proceedings related to the tax or special assessments for which the real property was sold; and (4) The regularity and validity of all proceedings related to the sale of the real property.

"(b) After two [2] years from the issuance of a certificate of sale, evidence may not be admitted in any court to rebut a presumption prescribed by subsection (a) of this section unless the certificate of sale was fraudulently procured. After four [4] years from the issuance of the certificate of sale, evidence may not under any circumstances be admitted in any court to rebut such a presumption."

The trial court specifically found "[t]hat I.C. 6–1.1–24–11(b) provides that after two years from the date of issuance of a Certificate of Sale, evidence may not be admitted in any Court to rebut the presumptions of I.C. 6–1.1–24–11(a), which includes the presumption as to the regularity and validity of the proceedings related to the taxes or assessments for which the property was sold and the proceedings related to the sale of the property."

■ If IC 1971, 6–1.1–24–11(b) is interpreted as a statute of limitations, it survives a constitutional challenge. The Legislature, based on considerations of public policy, may fix reasonable periods within which actions must be brought. *Sherfey v. City of Brazil* (1938), 213 Ind. 493, 13 N.E.2d 568. On the other hand, if the statute is construed as establishing a conclusive presumption as to the contents of the certificate of sale, it constitutes an unconstitutional infringement upon the power of the judiciary to inquire into possible irregularities in the tax sale procedure. *Little v. Ritchey et al.* (1961), 241 Ind. 587, 174 N.E.2d 52.

■ A statute is clothed with the presumption of constitutionality and every doubt must be resolved in favor of a statute's validity. *Dague v. Piper Aircraft Corp.* (1981), Ind., 418 N.E.2d 207. The statute must therefore be construed as a valid statute of limitations, which establishes time limits within which actions to challenge the contents of a certificate of sale must be brought. A statute which is constitutional may nevertheless be unconstitutionally applied. *Yick Wo v. Hopkins* (1886) 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220.

The statute in the present case was unconstitutionally applied. Instead of forming a bar to an untimely action, the statute here was applied in a manner which created a conclusive presumption and stripped St. Joseph County et al. of their defense to the Wilmes' suit. St. Joseph County et al.'s evidence of irregularities in the tax sale cannot therefore be barred by the statute.

Having determined that St. Joseph County et al.'s evidence concerning irregularities in the tax sale is admissible, it is now necessary to decide whether the trial court applied the proper measure of damages. The trial court awarded damages pursuant to IC 1971, 6–1.1–24–10(b) which provides:

"If the county treasurer, before the time of making the guarantee required by this section, received payment of the delinquent taxes or special assessments for which the real property was sold, the holder of the certificate may initiate an action upon the written guarantee or upon the official bond of the county treasurer. If an action is initiated under this section, the measure of damages is double the amount paid by the holder of the certificate plus legal interest on that amount."

This statute must be read in conjunction with IC 1971, 6–1.1–25–10 (Burns 1978 Repl.) which provides:

"If, before the execution of a deed to real property sold under IC 1971, 6–1.1–24 [6–1.1–24–1—6–1.1–24–12], it is found that the sale was invalid, the county auditor shall not execute the deed, but he shall refund the purchase money plus six percent [6%] interest from the county treasury to the purchaser, or his successors or assigns. The real property, if it is then eligible for sale under IC 1971, 6–1.-1–24, shall be placed on the delinquent list and again offered for sale."

These statutes provide for two different measures of damages and it must be presumed that the Legislature intended each statute to apply to a different situation. It is clear that if, before the execution of a deed, a tax sale is found to be invalid, the purchasers are entitled only to a refund of the purchase price plus interest. IC 1971, 6–1.1–24–10(b), on the other hand, applies where a tax sale is valid, but the purchaser does not acquire title to the property because the delinquent taxes were paid before the Treasurer's guarantee is issued.

■ *State, ex rel. v. Jennings* (1915), 183 Ind. 172, 108 N.E. 513 involved a situation where, subsequent to a tax sale, the county auditor declared the sale of one lot void because the taxes on that lot had been paid prior to the time of the sale. The Indiana Supreme Court acting pursuant to a statute similar to IC 1971, 6–1.1–25–10 declared that the auditor acted properly in refunding the purchase price plus interest instead of issuing a deed to the purchasers. The present case also involves a situation in which there were in fact no delinquent taxes on the real estate at the time of the tax sale. The sale is therefore invalid and the proper measure of damages is the purchase price plus interest in accordance with IC 1971, 6–1.1–25–10. That this is the result intended by the Legislature is supported by IC 1971, 6–1.1–25–11. This statute provides:

"(a) Subsequent to the execution of a deed to real property soid [sold] under IC 1971, 6–1.1–24 [6–1.1–24–1—6–1.1–24–12], a county auditor shall refund the purchase money plus six percent [6%] interest from the county treasury to the purchaser, or his successors or assigns, *if it is found that*:

(1) The real property described in the deed was not subject to the taxes for which it was sold;

(2) *The delinquent taxes or special assessments for which the real property was sold were properly paid before the sale*; or

(3) The real property was properly redeemed before the execution of the deed.

"(b) A person, including the county, to whom a refund is made under this section shall execute, acknowledge, and deliver to the owner a deed conveying whatever interest the purchaser may have acquired by the tax sale deed. If a county is required to execute a deed under this section, the deed shall be signed by the county board of commissioners and acknowledged by the clerk of the circuit court.

"(c) A refund may not be made under this section while an action initiated under either section 14 [6–1.1–25–14] or section 16 [6–1.1–25–16] of this chapter is pending." (Emphasis added.)

It would be totally illogical to award a purchaser double the purchase price if found, before the Auditor executes a deed, that the delinquent taxes for which the property was sold were properly paid before the sale, while a similar mistake discovered after the deed is executed entitles the purchaser to only a refund of the purchase price plus interest.

For the above reasons this case is reversed and remanded to the trial court for proceedings consistent with the opinion.

Reversed and remanded.

GARRARD, J., concurs.

STATON, J., dissents with opinion.

STATON, Judge, dissenting.

I respectfully dissent. I believe the Majority erred in addressing the functions of IC 6–1.1–24–10 and –25–10 (hereinafter IC 24–10 and IC 25–10). It is my position that, on the one hand, IC 25–10 is a legislative mandate to the county auditor. Should the tax sale be invalid, IC 25–10 requires the county auditor to refund the purchase price. On the other hand, IC 24–10 is a legislatively created cause of action which allows the purchaser damages should certain warrants under the county treasurer's guarantee prove false.[1]

IC 25–10 simply provides, in pertinent part:

"If .... it is found that the sale was invalid, the county auditor ... shall refund the purchase money plus six percent (6%) interest...."

The purchaser at the tax sale must submit the purchase price (bid amount) to the county auditor to obtain the certificate of sale.[2] IC–25–10 merely provides that if the sale is invalid, then the county auditor is to refund the purchase price. In other words, the Legislature mandates under IC–25–10 that the county auditor do what is essentially fair. If the sale is invalid, then the purchaser will not be entitled to the land (or tax deed)[3] and should, therefore, be refunded his investment in the land (purchase price plus interest).

IC–24–10 provides, en toto :

"(a) When a certificate of sale is issued under section 9 of this chapter, the county treasurer shall indorse upon, or attach to, the certificate of sale a written guarantee which is signed by him and which warrants:

"(1) that the taxes and special assessments upon the real property described in the certificate of sale are delinquent and were unpaid at the time of sale; and

"(2) that the real property is eligible for sale under this chapter.

"(b) If the county treasurer, before the time of making the guarantee required by this section, received payment of the delinquent taxes or special assessments for which the real property was sold, the holder of the certificate may initiate an action upon the written guarantee or upon the official bond of the county treasurer. If an action is initiated under this section, the measure of damages is double the amount paid by the holder of the certificate plus legal interest on that amount."

The county treasurer indorses a guarantee upon the certificate which warrants, in part, that the taxes on the land were due and owing at the time of sale.[4] Under this statute, the Legislature specifically provides the holder of the certificate with a cause of action based upon those warrants. If those warrants are in fact false, the measure of damages shall be double the purchase price.

The "mandate" character of IC–25–10 as contrasted to the "cause of action" character of IC–24–10 is readily apparent from the language used by the Legislature in these two statutes. IC–24–10 provides that the purchaser "may" initiate a cause of action upon the guarantee. However, IC–25–10 provides that the county auditor "shall" refund the purchase price. IC 24–10 specifically uses the language "cause of ac-

---

1. The only apparent relation between these two statutes, other than dealing with tax sales, is that both use the purchase price as a measure of cost. IC 24–10 provides that the measure of damages for the cause of action is twice the purchase price. IC 25–10 provides that the measure of the refund is the purchase price.

2. IC 6–1.1–24–7 & –9.

3. IC 6–1.1–25–10 provides in part:
"If ... it is found that the sale was invalid, the county auditor shall not execute the deed...."

4. In the present case, the treasurer's guarantee states:
"I ... do hereby guarantee that the assessments due upon the property named in the above certificate, for the years therein mentioned, have never been paid by the owner, nor by any person in his behalf, and that the same were yet due and unpaid at the time of the sale thereof mentioned in said certificate."

tion." IC–25–10, however, only addresses a refund of the purchase price. IC–24–10 specifically provides for the measure of "damages." IC–25–10, however, only states that the county auditor shall "refund" the money.

Therefore, if the tax sale is invalid for any reason, then the purchaser is entitled to a refund of his purchase price plus interest under IC–25–10. And, if the sale is invalid because one or more of the facts as warranted by the county auditor are false, the purchaser may initiate a cause of action upon the guarantee under IC–24–10. Should the purchaser prove those warrants false, then the purchaser is entitled to damages of twice the purchase price plus interest.

In other words, IC–25–10 does not provide "damages" for an invalid sale in the amount of the purchase price. There need be no cause of action to render the sale invalid. IC–25–10 simply provides that if the sale is found invalid, then the purchaser is to be refunded his purchase money plus interest.[5] However, IC–24–10 does specifically provide "damages" for a specific cause of action. If the sale is invalid under the specific cause of action allowed under IC–24–10, then the purchaser is entitled to "damages" twice the amount of the purchase price plus interest.

The county auditor should have refunded the purchase price with interest, as determined under IC–25–10, to the Wilmes. The Wilmes should have accepted that amount. Wilmes were also entitled to initiate a cause of action under IC–24–10 and pursue a judgment of twice the purchase price. Simply stated, should the Wilmes prove that the warrants under the guarantee were in fact false, then the Wilmes are entitled the refund of their purchase money with inter-

est (IC–25–10) *plus* twice the purchase price with interest (IC–24–10).

---

5. Citing to IC–25–10 and IC 6–1.1–25–11, the Majority states:

"It would be totally illogical to award a purchaser double the purchase price if it found, before the Auditor executes a deed, that the delinquent taxes for which the property was sold were properly paid before the sale, while a similar mistake discovered after the deed is executed entitles the purchaser to only a refund of the purchase price plus interest."

I agree. With my interpretation of IC–24–10 and IC–25–10, there is no "illogical" dichotomy between refund of the price before or after the tax deed is issued. The cause of action under IC–24–10 is not interdependent upon either IC–25–10 or IC 6–1.1–25–11. And the amount of refund is not dependent upon whether it occurs either before or after the tax deed is issued.