Gary EVENSON, Plaintiff–Appellant,

v.

OSMOSE WOOD PRESERVING COM-
PANY OF AMERICA, INCORPORAT-
ED; Mineral Research and Develop-
ment, Incorporated; and American
Wood Preservers Institute, Defendants–
Appellees.

No. 89–1178.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 28, 1989.

Decided April 18, 1990.

Rehearing and Rehearing In Banc Denied
June 11, 1990.

David S. McCrea, McCrea & McCrea,
Bloomington, Ind., Thomas E. Kotoske,
Palo Alto, Cal., for plaintiff-appellant.

Joan Fullam Irick, Kightlinger & Gray,
William T. Graden, Rocap, Reese & Dowl-
ing, John D. Cochran, Jr., Young, Cochran
& Reese, Peter G. Tamulonis, Kightlinger
& Gray, Indianapolis, Ind., for defendants-
appellees.

Before WOOD, Jr., RIPPLE and
MANION, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit
Judge.

This products liability action arises from
injuries allegedly caused by the plaintiff's
exposure to wood-treating chemicals.
Gary E. Evenson appeals from the district
court's grant of summary judgment for
defendants Osmose Wood Preserving, Inc.
("Osmose"), Mineral Research & Develop-
ment Corporation, Inc. ("Mineral Re-
search"), and American Wood Preservers
Institute ("American Wood"), on the
ground that the district court erred in hold-
ing that the Indiana statute of limitations
barred his action. For the reasons dis-
cussed below, we reverse and remand for
further proceedings.

## I. FACTUAL BACKGROUND

The defendants are parties to this suit
because of their involvement with chromat-
ed copper arsenate ("CCA"). Osmose and
Mineral Research manufacture a wood pre-
servative that contains CCA. Osmose pre-
pared a "Material Safety Data Sheet" and
wrote the label used on CCA containers.
American Wood represented the interests
of the CCA industry before the federal
Environmental Protection Agency during
that agency's regulatory investigation of
the arsenic used in treating wood. Indiana
Wood Preserving, Inc. ("Indiana Wood")
purchased CCA from Osmose and Mineral

Research to treat lumber. Indiana Wood then sold the treated lumber. Evenson worked at Indiana Wood as a wood treatment worker where he was exposed to CCA while carrying out his duties.

The events of this case are best understood chronologically:

March 1980: Evenson begins working at Indiana Wood as a wood treatment worker where he is exposed to CCA while carrying out his duties.

Late summer-early fall 1983: Evenson develops several conditions requiring medical treatment. Dr. Dean Felker, Evenson's general practitioner, diagnoses hay fever, nasal polyps, asthma, and allergic rhinitis. Dr. Felker makes no causal diagnosis except to say that severe allergies are the usual cause of nasal polyps. He refers Evenson to Dr. Steven Isenberg, an ear, nose, and throat specialist, for treatment of the nasal polyps in August 1983.

December 1983: Dr. Steven Isenberg surgically removes Evenson's nasal polyps.

April 1984: Dr. Steven Isenberg refers Evenson to Dr. Paul Isenberg, an asthma specialist. Dr. Paul Isenberg diagnoses Evenson as having an asthma triad (asthma, nasal polyps, and aspirin sensitivity) as well as certain other allergies.

February 20, 1985: Because he is concerned that CCA may be causing his medical problems, Evenson asks Dr. Felker to run tests for CCA in his urine.

March 19, 1985: Evenson leaves Indiana Wood due to medical problems.

March 20, 1985: The urine test is completed and shows normal levels of the chemicals that make up CCA. Because of the test results, Dr. Felker believes that CCA is not causing Evenson's symptoms.

April 1985: For the second time, Dr. Steven Isenberg removes Evenson's nasal polyps. Evenson requests that the polyps be checked for CCA. Dr. Steven Isenberg sends out a sample for testing but never receives the results and is unable to identify the cause of the polyps. Evenson also asks Dr. Paul Isenberg if CCA might be related to his problems but receives no affirmative response.

June 1985: Evenson switches his medical care to the Veteran's Administration hospital in Indianapolis.

September 1986: Evenson moves to Wisconsin and begins receiving medical treatment from various Veteran's Administration hospitals in that state.

December 3, 1986: Evenson first speaks with attorney David McCrea, who is involved in other CCA litigation.

January 1987: On McCrea's referral, Evenson sees Dr. Henry Peters, a neurologist associated with the University of Wisconsin. Dr. Peters tells Evenson that exposure to CCA for any length of time is extremely hazardous.

February 1987: Tests for arsenic on Evenson's hair come back negative.

March 13, 1987: Evenson files his complaint in state court.

April 1987: Dr. Daniel Teitelbaum, a medical toxicologist in Denver, Colorado, examines Evenson after McCrea arranges an appointment. Dr. Teitelbaum confirms Evenson's suspicions that CCA is the cause of his injuries.

Evenson sought recovery on theories of strict liability in tort, negligence, wilful misconduct for failure to warn of the dangers associated with CCA exposure, and for fraudulent concealment of such dangers. Based on diversity of citizenship, the defendants removed the suit to federal district court. The defendants filed a motion for summary judgment on the grounds that the Indiana statute of limitations barred Evenson's action. *See* Ind.Code § 33-1-1.5-5. Defendant Osmose also argued that Evenson's claims were preempted by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"). *See* 7 U.S.C. § 136.

The district court granted the defendants' motions for summary judgment, holding that the two-year Indiana statute of limitations barred Evenson's product liability action as well as his fraudulent con-

cealment and failure-to-warn claims.[1] In granting the defendants' motion for summary judgment, the district court did not address the preemption issue raised by Osmose.

Evenson appeals from the district court's final decision, arguing that the statute of limitations began to run February 1985 and that the doctrine of fraudulent concealment did not apply. In addition to supporting the district court's decision, Osmose also renews its argument that FIFRA preempts Evenson's action.

## II. DISCUSSION

In the context of a summary judgment motion based on the statute of limitations, we must find (1) that the statute of limitations has run and (2) there exists no genuine issue of material fact as to when the plaintiff's cause of action accrued. *Kuemmerlein v. Board of Educ.*, 894 F.2d 257, 261 (7th Cir.1990); *Yorger v. Pittsburgh Corning Corp.*, 733 F.2d 1215, 1219 (7th Cir.1984). We review *de novo* the district court's grant or denial of summary judgment. *Dribeck Importers, Inc. v. Heileman Brewing Co., Inc.*, 883 F.2d 569, 573 (7th Cir.1989); *Greer Properties, Inc. v. LaSalle Nat'l Bank*, 874 F.2d 457, 459 (7th Cir.1989).

■ Indiana's applicable statute of limitations provides: "[A]ny product liability action in which the theory of liability is negligence or strict liability in tort must be commenced within two (2) years after the cause of action accrues...." Ind.Code § 33–1–1.5–5. Because chemicals and products are capable of causing injuries that often do not become evident until well after a plaintiff's last exposure to them, Indiana, like many other states, has adopted a discovery rule. *Barnes v. A.H. Robins Co.*, 476 N.E.2d 84 (Ind.1985). Under this rule, the Indiana statute of limitations begins to run from the date that the plaintiff knew or should have discovered (1) that the plaintiff suffered an injury or impingement and (2) that the injury or impingement was caused by the product or act of another. *Id.* at 87–88. Thus, the Indiana discovery rule has both an injury and a causation prong.

Evenson was aware that he was experiencing medical problems in the latter part of 1983, well over two years before he filed his complaint. The focus is therefore on the causation prong—when Evenson knew or should have discovered that his injuries were caused by his exposure to CCA.[2]

The district court observed that the Indiana discovery rule emphasizes knowledge of a potential rather than an actual link. Citing *Miller v. A.H. Robins Co.*, 766 F.2d 1102 (7th Cir.1985), the district court stated that the causation prong of the discovery rule "is satisfied if the plaintiff is informed of a 'possible causal connection' between the foreign substance and the injury of which he complains." Again relying on *Miller*, the district court noted that having a fair opportunity to investigate available sources of information does not require possessing irrefutable proof of causation. The district court believed it was enough that Evenson himself suspected that CCA may have been causing his injuries. The court therefore held that the statute of limitations began to run on February 20, 1985, when Evenson requested Dr. Felker to order tests that might sub-

---

1. Products liability actions based on failure to warn are subject to the general Indiana statute of limitations of two years. *See DeHoyos v. John Mohr & Sons*, 629 F.Supp. 69 (N.D.Ind. 1984). Fraudulent concealment counts, however, are usually subject to a six-year statute of limitations. *See* Ind.Code § 34–1–2–1. The statute begins to run regardless of concealment when a plaintiff learns of information that would lead to the discovery of the cause of action through diligence. *Miller v. A.H. Robins Co.*, 766 F.2d 1102, 1106–07 (7th Cir.1985). Because the district court found that Evenson had such information, it held that the statute of

limitations also barred the fraudulent concealment claim.

2. Evenson moved that we certify to the Supreme Court of Indiana the question whether medical diagnosis is required to satisfy the second prong of the discovery rule adopted in *Barnes*. *See* 7th Cir.R. 52. The question of what satisfies the causation prong of the Indiana discovery rule may be determinative of this case, but Indiana case law is not so unclear that certification is necessary to determine its meaning. Evenson's motion to certify this question is hereby denied.

stantiate Evenson's theory about CCA being a possible cause of his medical problems. Because Evenson did not file his complaint until March 13, 1987, the district court concluded that the statute of limitations barred his action.

The district court's conclusion was clearly reasonable. We would agree with the court's holding except we believe that the court, in applying the Indiana discovery rule, did not give sufficient weight to an unusual factor in this case. Evenson, despite his diligent efforts, received no indication anytime prior to the two-year period before he filed his complaint that his suspicion as to the cause of his injuries might be correct. We believe this factor distinguishes the present case from our decision in *Miller*. In *Miller*, a woman and her husband sued the manufacturer of the Dalkon Shield, an intrauterine device, after it was determined that a pelvic infection had left her infertile. We affirmed the district court's decision that her suit was barred by the statute of limitations after determining that Miller could have discovered both that other women were suing the Dalkon Shield's manufacturer on the ground that the device caused pelvic infections and that her doctors' hospital discharge summary identified the Dalkon Shield as a likely cause of her injuries.

Evenson, a mere layperson, only suspected that CCA was causing his medical problems. Although Evenson asked various doctors over the course of his continuous medical treatment if CCA could be the cause of his injuries, no doctor, prior to the two-year period before he filed his complaint, confirmed his suspicions that CCA might be the cause.[3] Evenson, because of his suspicions, also requested appropriate tests to substantiate his theory; yet the urine test done under Dr. Felker's direction came back negative and Dr. Steven Isenberg never received the results of the tests done on the polyp sample following Evenson's second surgery.

On appeal, Evenson argues that a layperson's mere suspicion is not sufficient to trigger the statute of limitations under Indiana's discovery rule. He contends that information as to the probable, not possible, cause of the injury is required before the statute will begin to run. Evenson urges this court to construe the causation prong to require actually finding a doctor willing to testify, based on medical probability, that the defendant's product caused the injury. Evenson asserts that the statute began to run on December 3, 1986, because it was then that he first spoke with his attorney, David McCrea. McCrea knew Dr. Teitelbaum through other CCA litigation and was aware of Dr. Teitelbaum's belief that a causal link existed between CCA and the type of injuries exhibited by Evenson. Because he filed his complaint within two years of his first conversation with McCrea, Evenson argues his action is not time barred.[4]

Although we agree locating a doctor willing to testify that a particular product is the probable cause of the plaintiff's injuries would trigger the statute of limitations, we disagree with Evenson that this is the only event capable of doing so. Defendants correctly point out that the cases cited by

**3.** Defendants claim that certain of Evenson's doctors told him that there could be a connection between his CCA exposure and his injuries. But those doctors' statements were made within the two-year statutory period, a fact defendants' counsel acknowledged at oral argument, and thus are not indicative of Evenson's state of mind prior to that time.

Defendants also argue that the record does not show that Evenson's doctors ever communicated to him their lack of knowledge regarding his believed connection between CCA and his injuries and that Evenson was never dissuaded from his belief that exposure to CCA was causing his injuries. Defendants' arguments miss the point: prior to the two-year statutory period, Evenson still had no more than his own suspicions that CCA was responsible for his problems.

**4.** At oral argument, counsel explained that Evenson filed his complaint on March 13, 1987, because of the possibility that a court would find that the statute began to run on March 19, 1985, the date of Evenson's last exposure to CCA, when he left Indiana Wood. This was a reasonable concern, and we therefore find unpersuasive Osmose's argument that Evenson's filing the complaint before Dr. Teitelbaum examined him shows that his position is without merit.

Evenson applying the Indiana discovery rule establish only that a medical diagnosis causally connecting a plaintiff's exposure to a product and his injuries is sufficient to start the statute running, not that such a diagnosis is necessary. *See McDowell v. Johns–Manville Sales Corp.*, 662 F.Supp. 934, 936 (S.D.Ind.1987); *Groce v. Johns–Manville Sales Corp.*, 662 F.Supp. 936, 937 (S.D.Ind.1987); *Ford v. Johns–Manville Sales Corp.*, 662 F.Supp. 938, 939 (S.D.Ind. 1987). At the same time, we disagree with defendants that a layperson's mere suspicion, even when coupled with the start of an investigation, automatically triggers the statute. Fed.R.Civ.P. 11 would arguably require sanctions against a party who files suit based on nothing more than the kind of suspicions Evenson had in the present case.[5]

While we are aware of the value of bright lines in rules of procedure, *see, e.g., Kuemmerlein*, 894 F.2d at 260, it is futile to try to draw firm lines in the context of the discovery rule in these circumstances. We can be no more specific than to say that where knowledge of causation is at issue, a person knows or should have discovered the cause of his injury when he has or should have discovered some evidence that there was a reasonable possibility that his injury was caused by the act or product of another. A reasonable possibility, while less than a probability, requires more than the mere suspicion possessed by Evenson, a layperson without technical or medical knowledge. In applying this rule, district courts will necessarily be bound to a fact-specific inquiry.

■ In the present case, the evidence on the record does not show that as of February 20, 1985, Evenson had or should have discovered some evidence that there was a reasonable possibility that his CCA exposure was the cause of his injuries. Although Evenson himself suspected at this time that CCA was the culprit, his attempts to determine the actual cause were rebuffed by his doctors in whom he could place some reliance. What Evenson had on February 20, 1985, was not some evidence of a reasonable possibility that CCA was the cause but only a layman's mere suspicion to this effect.

Events short of a doctor's diagnosis can provide a plaintiff with evidence of a reasonable possibility that another's act or product caused his injuries. Nevertheless, there must be something more than a plaintiff's mere suspicion or speculation—a reasonable, not a mere, possibility is required to trigger the statute.[6]

Evenson filed his complaint on March 13, 1987, and we have concluded that the statute had not begun to run as of February 20, 1985. Evenson's claim, therefore, will be barred by the two-year statute of limitations only if, between February 20, 1985 and March 13, 1985, Evenson knew or should have discovered some evidence that there was a reasonable possibility that CCA was the cause of his injuries. Although we ordinarily would remand to the district court to determine when the statute of limitations began to run, we need not burden the district court in this case. We have the complete record before us and our review of the record reveals that nothing happened during that critical three-week period to satisfy this test. We therefore conclude that Evenson's suit is not barred by Indiana's statute of limitations.

### III. CONCLUSION

Because Evenson neither had nor should have discovered some evidence that there

---

5. Rule 11 provides in relevant part: "The signature of an attorney or party constitutes a certificate that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact...."

6. Defendants claim that knowledge of a possible cause of one's injuries is the standard under

*Miller* and that Evenson's belief as to the cause of his injuries meets this standard. It is true we referred to plaintiff's knowledge of "a possible cause" in *Miller*. *E.g.*, 766 F.2d at 1103. Defendants, however, attempt to elevate these references to the level of a standard, a result that we did not intend. Under the facts in *Miller*, it was clearly more than a mere possibility that the Dalkon Shield was the cause of Ms. Miller's pelvic infection.

was a reasonable possibility that CCA was the cause of his injuries more than two years before he filed his complaint, the Indiana statute of limitations does not bar his action. Although the applicability of the fraudulent concealment doctrine is no longer an issue, Osmose has renewed its FIFRA preemption argument. The district court did not consider whether FIFRA preempts Evenson's suit. Rather than decide the preemption issue prematurely, we remand the case to the district court for its determination of this issue. We therefore reverse the district court's entry of summary judgment and remand to the district court to determine whether Evenson's suit is preempted by FIFRA and for such further proceedings as may be appropriate. Circuit Rule 36 is not applicable to this case.

MANION, Circuit Judge, dissenting.

I respectfully dissent. The "discovery" rule set out by the Indiana Supreme Court in *Barnes v. A.H. Robins Co., Inc.*, 476 N.E.2d 84 (Ind.1985) applies. Thus the statute of limitations should begin to run from the date the plaintiff knew or should have discovered that he suffered from an injury or impingement caused by the conditions imposed upon him in the workplace. No later than February 20, 1985 he was well aware of his medical problems and that they might be caused by his work environment. He suspected the cause was related to his exposure to CCA, but no doctor would verify. Because of this knowledge and suspicion, however, as of February 20, 1985, when he asked the doctor to examine him for CCA damage, he had sufficient indices to "have a fair opportunity to investigate available sources of relevant information and to decide whether to bring [his] claims in court within the time limitations in the statute." *Id.* at 88. Even though no doctor confirmed Evenson's suspicion before he filed, likewise no doctor told him the workplace exposure to CCA was *not* the cause.

The majority's refined rule does not make Indiana's "discovery" rule any clearer. "[W]here knowledge of causation is at issue, a person knows or should have dis-covered the cause of his injury when he has or should have discovered some *evidence* that there was a *reasonable possibility* that his injury was caused by the act or product of another." Maj. op. at 705 (emphasis added). On the one hand, Evenson's symptoms coupled with the relationship in time to their onset with his work at Osmose can be evidence of a reasonable possibility that CCA exposure was the cause. Otherwise, the only information beyond what Evenson knew on February 20, 1985 that would obligate him to file suit two years hence would be a statement—probably from a medical expert—that there was a reasonable possibility CCA caused the problem. This search for an expert could go on for many years after his departure from the company. To prove his case at trial Evenson would probably need an expert to testify. But to file suit (and avoid Rule 11) he doesn't need irrefutable proof of causation. *Miller v. A.H. Robins Co., Inc.*, 766 F.2d 1102, 1105 (7th Cir.1985).

I believe we are obligated to follow the rule set down by the Indiana Supreme Court in *Barnes*. Also, the seasoned district judge is very knowledgeable in Indiana law, and his close examination of the facts and the application of the Indiana rule merit some deference. *Moore v. Tandy Corp.*, 819 F.2d 820, 823 (7th Cir.1987) ("[I]n a close case our policy is to defer to the district judge's interpretation of the law in the state in which the judge sits....") (citations omitted). While the facts of this case make the application of any legal standard difficult, I would affirm the district court.