**ALLIED RESIN CORPORATION, Conap, Inc., and Synair Corporation, Defendants–Appellants,**

v.

**Barry J. WALTZ, Plaintiff–Appellee.**

No. 06A01–9002–CV–58.

Court of Appeals of Indiana, First District.

Sept. 13, 1990.

Opinion on Denial of Rehearing Nov. 8, 1990.

Norman T. Funk, Hill, Fulwider, McDowell, Funk & Matthews, R. Robert Stommel, Lewis, Bowman, St. Clair & Wagner, James L. Petersen, Donald M. Snemis, Ice, Miller, Donadio & Ryan, Indianapolis, for defendants-appellants.

Rosemary G. Spalding, Price & Shula, Indianapolis, for plaintiff-appellee.

BAKER, Judge.

Defendants-appellants, Allied Resin Corporation, Conap, Inc., and Synair Corporation (hereinafter collectively referred to as "the Manufacturers"), appeal the denial of their motions for summary judgment claiming the trial court erred in determining that plaintiff-appellee, Barry J. Waltz's, action for personal injuries was not barred by the applicable statute of limitations.

We affirm.

## FACTS

The facts underlying Waltz's complaint arise from injuries he allegedly sustained from exposure to chemicals at his place of employment. Waltz was employed by Tedco, Inc. (Tedco), an Indiana business that was engaged in manufacturing polyurethane products. The complaint alleges that the Manufacturers produced and supplied the chemicals used in Tedco's manufacturing process.

The events leading to the filing of Waltz's complaint occurred in the following chronological order:

*Approximately March, 1982*

Waltz begins employment at Tedco.

*Between September, 1982 and December, 1982*

Tedco begins manufacturing polyurethane products and introduces several chemicals into the workplace, including isocyanates, polyisocyanate resins, methyl ethyl ketone, and others.

*August or September, 1983*

Waltz begins to experience symptoms of nasal congestion and fatigue.

*October 4, 1983*

Waltz consults Dr. Jetmore, an ear, nose and throat specialist, about his symptoms. Dr. Jetmore diagnoses a deviated septum as the cause of Waltz's symptoms. He prescribes a decongestant/antihistamine and a steroid nasal spray to relieve Waltz's symptoms.

*November 23, 1983*

Because the medication does not improve Waltz's symptoms, Dr. Jetmore performs surgery on him for a deviated septum.

*December 28, 1983*

Waltz's symptoms do not improve after the surgery. Dr. Jetmore diagnoses the

cause of his symptoms as allergic in nature.

*June 20, 1984*

Waltz returns to Dr. Jetmore because his symptoms still persist. When Waltz asked if exposure to methyl ethyl ketone was the cause of his symptoms, Dr. Jetmore said he did not know.

*July 13, 1984*

Waltz visits Dr. Erxleben, an internist. Waltz supplies Dr. Erxleben with material safety data sheets that he obtained and that list the symptoms resulting from over-exposure to chemicals to which he had been exposed. Waltz states his suspicion that his physical symptoms are due to chemical exposure in the workplace. Dr. Erxleben determines Waltz's symptoms are probably due to vasomotor rhinitis, but may possibly have been exacerbated by chemical fumes at work. Dr. Erxleben prescribes decongestants to relieve Waltz's symptoms. Waltz requests blood tests to evaluate chemical exposure but Dr. Erxleben is unable to locate a laboratory capable of performing the tests.

*July 18, 1984*

Dr. Erxleben writes Waltz a letter and explains his medical problem as: "Chronic nasal congestion—not clearly due to chemical toxicity." *Record* at 520.

*February 21, 1985*

Because his symptoms do not subside, Waltz calls Dr. Jetmore who refers him to Drs. Johnson and Niemes, board-certified allergists.

*March 5, 1985*

Waltz visits Dr. Johnson, one of the allergists Dr. Jetmore referred him to, who performs allergy tests. Dr. Johnson determines Waltz is allergic to multiple pollens, mold spores, house dust and house dust mites. Dr. Johnson tells Waltz that these allergies are the cause of his symptoms and recommends allergy injections.

*March 7, 1985*

Dr. Johnson commences administering weekly allergy injections to Waltz.

*July 25, 1985*

Waltz's symptoms do not improve so Dr. Johnson increases the dosage of Waltz's weekly allergy injections.

*October 22, 1985*

Dr. Johnson administers RAST tests to determine whether Waltz's symptoms were caused by chemical exposure in the workplace. The test results are inconclusive. Dr. Johnson tells Waltz that chemical exposure might be a possible cause of his symptoms and refers Waltz to Dr. Bernstein for further testing to determine causation.

*January 30, 1986*

Dr. Johnson ceases administering the weekly allergy injections.

*Early 1986*

Dr. Bernstein conducts several tests and concludes that Waltz's symptoms were caused by chemical exposure at Tedco.

*October 19, 1987*

Waltz returns to Dr. Jetmore and requests examination for nasal polyps. Dr. Jetmore finds no nasal polyps. Waltz tells Dr. Jetmore that he was exposed to isocyanate. Dr. Jetmore tells Waltz he is not equipped to diagnose or treat chemical problems.

*October 21, 1987*

Waltz files complaint against the Manufacturers.

The Manufacturers moved for summary judgment claiming that Waltz's complaint was barred by the applicable statute of limitations. The trial court denied the Manufacturers' motion and, pursuant to its authority under Ind.Trial Rule 56(B), entered partial summary judgment in favor of Waltz on the limitations issue only.[1] The Manufacturers appeal the trial court's decision.

## DISCUSSION AND DECISION

Given the chronology of facts set forth above, the sole question presented to this court is when did Waltz's cause of action accrue.[2] The statute of limitations applica-

1. T.R. 56(B) provides in pertinent part:
   When any party has moved for summary judgment, the court may grant summary judgment for any other party upon the issues raised by the motion although no motion for summary judgment is filed by such party.

2. In their briefs, the parties also argue the propriety of Waltz's allegation of fraudulent concealment against manufacturer Synair Corporation. The fraudulent concealment doctrine is equitable in nature and operates to estop the defendant from asserting the statute of limitations as a defense when that defendant, by deception or violation of duty, conceals material facts from the plaintiff thereby preventing him from discovering a wrong. *Cyrus v. Nero* (1989), Ind.App., 546 N.E.2d 328. The fraudulent concealment doctrine need not be addressed in this case because we have determined that Waltz timely filed his action.

ble to personal injury actions sounding in negligence or strict liability is IND.CODE 33-1-1.5-5 which, at the time Waltz filed his claim, provided:

> [A]ny product liability action in which the theory of liability is negligence or strict liability in tort ... must be commenced within two (2) years after the cause of action accrues....

While the statute requires product liability actions to be brought within 2 years after the cause of action accrues, the legislature left the determination of when a cause of action accrues to the courts. *Barnes v. A.H. Robins Co.* (1985), Ind., 476 N.E.2d 84. In *Barnes*, the Indiana Supreme Court answered a question certified by the Seventh Circuit Court of Appeals regarding when a cause of action accrues within the meaning of the statute of limitations for personal injury actions, IND. CODE 34-1-2-2, and product liability actions, IND.CODE 33-1-1.5-5, "when the injury to the plaintiff is caused by a disease which may have been contracted as a result of protracted exposure to a foreign substance." *Barnes*, 476 N.E.2d at 85. As the Indiana Supreme Court noted, the introduction of new chemicals and products into our economy and workplace has resulted in an increasing number of diseases and injuries that do not always manifest themselves immediately. *Id.*

The rule in Indiana prior to the supreme court's adoption of the discovery rule in *Barnes*, was "generally understood to be that a cause of action accrues when the resultant damage of a negligent act is ascertainable or by due diligence could be ascertained." *Id.* at 86. The supreme court undertook to address the question left open by the general rule. That is, "how ascertainable a particular injury was and what standard would be applied as to what is reasonably ascertainable." *Id.* at 86. The supreme court then adopted a discovery rule with respect to injuries caused by a disease which may have been contracted as a result of protracted exposure to a foreign substance. The rule provides that:

> [T]he statute of limitations in such causes commences to run from the date the plaintiff knew or should have discovered that she suffered an injury or im-

pingement, and that it was caused by the product or act of another.

*Id.* at 87–88. Thus the rule requires an inquiry into the plaintiff's knowledge of: 1) an injury; and 2) causation. The inquiry must be guided by a consideration of the reasonableness of the plaintiff's actions in ascertaining the existence of actionable harm. The supreme court, in adopting the discovery rule set forth in *Barnes*, articulated the standard to be applied to determine what is reasonably ascertainable. The requirement of reasonableness arises from the pre-*Barnes* general rule and was not eliminated by the adoption of the discovery rule.[3]

Disposition of a case by summary judgment is appropriate only when no genuine issues of material fact exist and the moving party is entitled to a judgment as a matter of law. Ind.Trial Rule 56(C). In reviewing the propriety of a summary judgment, this court applies the same standard as the trial court. *Sprowl v. Eddy* (1989), Ind.App., 547 N.E.2d 865. We resolve any doubt against the proponent of the motion, taking all facts properly asserted by the party opposing the motion as true. *T.S.B. v. Clinard* (1990), Ind.App., 553 N.E.2d 1253. The proponent has the burden of establishing the motion's propriety. *Id.* Thus, when a statute of limitations defense is offered as the ground for the motion, the moving party must presumptively establish the defense by presenting the trial court with T.R. 56(C) materials demonstrating that the action was initiated beyond the statutory limit. *Sprowl*, 547 N.E.2d at 866.

All of the parties in the present case agree that Waltz had knowledge of his symptoms more than two years prior to October 21, 1987, the date he filed his complaint. The focus of the claim accrual issue, therefore, is on the question of causation—when did Waltz know or should he have discovered that his symptoms were caused by his exposure to the Manufacturers' chemicals? The Manufacturers argue Waltz discovered the cause of his injuries, within the meaning of the discovery rule, on July 13, 1984, the day he visited Dr. Erxleben. The Manufacturers contend that because Waltz was armed with the material safety data sheets revealing that

---

**3.** Subsequent to *Barnes*, the supreme court further elaborated on the discovery rule in the context of an asbestos case, *Covalt v. Carey* *Canada, Inc.* (1989), Ind., 543 N.E.2d 382, and a defamation case, *Burks v. Rushmore* (1989), Ind., 534 N.E.2d 1101.

exposure to one of the chemicals might cause symptoms similar to his, and because Dr. Erxleben told him that his exposure to the chemicals may have possibly caused his injuries, Waltz had the requisite knowledge of a reasonable possibility of causation, thus triggering the running of the statute of limitations. Waltz responds that although he had his own suspicions as to causation, he did not know of the cause of his symptoms until early 1986, when Dr. Bernstein told him that the exposure to chemicals was the cause of his respiratory problems.

We reject the Manufacturers argument that the subjective suspicions Waltz formed were enough to trigger the statute of limitations. We also disagree with their assertion that the close proximity in time between the introduction of new chemicals into Waltz's workplace and the onset of his symptoms was enough to charge him with knowledge of the existence of a cause of action. It is undisputed that Waltz is a layperson with no technical or medical expertise. He testified in his deposition that he had a suspicion that the chemicals were responsible for his ailments. His suspicion prompted him to aggressively pursue relief for his symptoms through treatment from medical professionals who could either confirm his suspicion or tell him what other cause could exist. His efforts to seek relief were met with equivocal answers from the doctors together with treatments for ailments that were not the cause of his symptoms.

Dr. Erxleben told Waltz that the cause of his injuries was vasomotor rhinitis. Dr. Erxleben's response to Waltz's inquiry into the possible effect his exposure to chemicals had on his symptoms was that the symptoms were "not clearly due to chemical toxicity." *Record* at 520. Contrary to the Manufacturers' assertion, we believe that Dr. Erxleben's response is equivocal enough to prevent this court from determining that, as a matter of law, Waltz knew or should have discovered the cause of his injuries when he saw the doctor on July 13, 1984.

Our decision is not to be interpreted to mean that a medical diagnosis is a necessary prerequisite to establishing causation in these types of cases. *See Evenson v. Osmose Wood Preserving Co. of America*

(7th Cir.1990), 899 F.2d 701. A conclusive diagnosis is a decisive factor, however, when a plaintiff uses reasonable efforts in seeking medical attention to discover the cause of his injuries but initially receives equivocal explanations for his symptoms and diagnoses and treatments that are inconsistent with his suspicions. In the present case, Waltz's first doctor diagnosed a deviated septum and performed surgery consistent with that diagnosis. He said he did not know whether Waltz's continuing symptoms were attributable to his exposure to chemicals. The second doctor told Waltz that his symptoms were probably due to vasomotor rhinitis and were not clearly due to chemical toxicity. He prescribed decongestants for Waltz's symptoms. The third doctor diagnosed Waltz's symptoms as allergic and administered allergy injections. After 7 months of allergy injections, the third doctor was the first one to seriously consider Waltz's suspicion that his symptoms could be attributable to chemical exposure. That doctor's tests, however, were inconclusive. Waltz did not receive a confirmation of his suspicions until early 1986, when he saw the fourth doctor.

We recognize that there is nothing in the record, outside of the allegations in Waltz's complaint, to indicate that Waltz actually saw Dr. Bernstein, the fourth doctor. Similarly, there is no evidence outside the complaint of what diagnosis Dr. Bernstein made. This raises a question of fact. This fact, however, is not material to the issue of when Waltz knew or should have discovered the cause of his injuries. As our above discussion indicates, prior to his visit to Dr. Johnson on October 22, 1985, Waltz's suspicions were still unconfirmed because he received only equivocal answers and alternative diagnoses and treatments from the doctors he consulted. Accordingly, the limitations period could not have begun to run prior to October 22, 1985, and any filing within two years of that date would have been timely. Waltz filed his complaint on October 21, 1987, which was within two years following the date when his suspicions were as yet unconfirmed. Whether Waltz discovered the cause of his injuries on a date subsequent to October 22, 1985, is immaterial because his complaint would still have been filed within two years of that date.

The decision we reach today is consistent with two recent cases decided by the Seventh Circuit Court of Appeals. *Evenson*, 899 F.2d 701; *Miller v. A.H. Robins Co.* (7th Cir.1985), 766 F.2d 1102. In *Miller*, the plaintiff had a Dalkon Shield intrauterine device inserted on July 24, 1972. On October 13, 1974, the plaintiff was taken to the emergency room of a local hospital where she was treated for a pelvic infection. After the plaintiff married in 1980, she experienced difficulty becoming pregnant. As a result, she consulted a doctor in 1981 who performed fertility tests. Her doctor determined that the plaintiff was infertile due to extensive scarring in her ovaries and fallopian tubes. Her doctor also advised her that it was his opinion that a causal relationship existed between her infertility and the severe pelvic infection she suffered in 1974. On November 13, 1981, the plaintiff brought a products liability action against the manufacturer of the Dalkon Shield. The district court granted the defendant manufacturer's motion for summary judgment on statute of limitations grounds.

In affirming the district court on appeal, the seventh circuit looked to our supreme court's opinion in *Barnes, supra,* for guidance in applying the newly adopted discovery rule. With respect to causation, the court noted that Ms. Miller's doctor told her in 1974 that the Dalkon Shield was one of several possible causes of her illness. The court reasoned that the doctor's statement should have prompted the plaintiff "either to contact a lawyer *or* to conduct her own inquiry." *Miller*, 766 F.2d at 1105 (emphasis added). According to the court, had Ms. Miller conducted an inquiry, she would have discovered enough information to justify commencing a lawsuit. The same is not true in the present case.

Waltz initiated an investigation but the results of his investigation were not as conclusive as Ms. Miller's would have been. The present case is more like the Eleventh Circuit Court of Appeals decision in *Ballew v. A.H. Robins Co.* (11th Cir.1982), 688 F.2d 1325, which the seventh circuit factually distinguished in *Miller*. Ms. Ballew also sued the Dalkon Shield manufacturer after the statute of limitations expired. Ms. Ballew, however, specifically asked four doctors whether the Dalkon Shield caused her injuries. The eleventh circuit reversed the summary judgment entered in the manufacturer's favor because all four doctors gave Ms. Ballew equivocal responses. The seventh circuit affirmed the manufacturer's summary judgment motion in *Miller*, because Ms. Miller did not receive equivocal answers, her doctor did nothing to quash her suspicions, and she failed to execute a proper investigation. 766 F.2d at 1106. Unlike Ms. Miller, and like Ms. Ballew, Waltz conducted his own tireless investigation, received equivocal responses from his doctors, and his doctors treated him for allergies which temporarily quashed his suspicion that his symptoms were due to chemical exposure. Accordingly, the Manufacturer's motion for summary judgment was properly denied.

Most recently, the seventh circuit applied the Indiana discovery rule announced in *Barnes*, 476 N.E.2d 84, to a case involving facts similar to those in the present case. *Evenson*, 899 F.2d 701. In *Evenson*, a wood treatment worker brought a products liability action against the manufacturers of a wood preservative that contained chromated copper arsenate (CCA). In March, 1980, the plaintiff in *Evenson*, began working in a chemical environment and later developed symptoms requiring medical treatment. As in the present case, the plaintiff's doctors told him that his injuries were caused by allergies. The doctors made the diagnoses despite the plaintiff's requests for tests to evaluate any CCA exposure because he believed his symptoms were caused by his exposure to chemicals in the workplace. The plaintiff visited four physicians before he was told that his prolonged exposure to CCA caused his symptoms. The plaintiff filed his suit seven years after he was first exposed to the chemical.

Although the district court granted the defendant's motion for summary judgment, the seventh circuit reversed, reasoning that Evenson did not have "some evidence of a reasonable possibility that CCA was the cause but only a layman's mere suspicion to this effect." *Id.* at 705. The seventh circuit in *Evenson* refused the same argument advanced by the defendants in the present case. The seventh circuit refused the position "that a layperson's mere suspicion, even when coupled with the start of an investigation, automatically triggers the

statute." *Id.* The court recognized that applying the discovery rule involves a fact specific inquiry and offered the following guidance when causation is at issue:

> We can be no more specific than to say that where knowledge of causation is at issue, a person knows or should have discovered the cause of his injury when he has or should have discovered some evidence that there was a reasonable possibility that his injury was caused by the act or product of another. A reasonable possibility, while less than a probability, requires more than the mere suspicion possessed by Evenson, a layperson without technical or medical knowledge.

*Id.*

We believe that Waltz stands in the same position as the plaintiff in *Evenson.* While Waltz, a layperson, had a suspicion that his injuries were caused by his exposure to chemicals in the workplace; he did not have evidence of a reasonable possibility. The possibility, although evident, was not reasonable. Like Evenson, Waltz's persistent attempts to determine the actual cause of his injuries were rebuffed when his doctors rendered equivocal responses and treated him for allergies. Constrained as we are to view the evidence in a light most favorable to Waltz, the nonmoving party, we find that the Manufacturers failed in their burden of establishing that Waltz initiated his action against them beyond the statutory limit. For this reason, we hold that Judge Drury properly denied the Manufacturers' motions for summary judgment and entered partial summary judgment in favor of Waltz on the limitations issue.

Judgment affirmed.

## On Petition for Rehearing

The Manufacturers jointly petition for rehearing in which they claim we made five errors in our original opinion. We believe one of their contentions has merit and we address it in the present opinion. ∎

In our original opinion, *Allied Resin Corp. v. Waltz* (1990), Ind.App., 559 N.E.2d 390, we affirmed the trial court's denial of the Manufacturers' motion for summary judgment. In that opinion, we viewed the evidence in the light most favorable to Waltz, the nonmoving party, and found that the Manufacturers failed to establish that Waltz commenced his cause of action beyond the applicable statute of limitations. As the Manufacturers correctly point out in their rehearing petition, however, we failed to review the trial court's grant of summary judgment in favor of Waltz pursuant to Ind. Trial Rule 56(B). We undertake in this opinion to review the propriety of that judgment.

When reviewing the grant of summary judgment in Waltz's favor, we will treat the Manufacturers, who were the original moving parties,[1] as if they were the nonmoving parties. We are therefore required to view the evidence in a light most favorable to the Manufacturers. *T.S.B. v. Clinard* (1990), Ind.App., 553 N.E.2d 1253.

The uncontroverted evidence reveals that Waltz had a subjective suspicion that his injuries were caused by his exposure to chemicals in the workplace more than two years prior to the commencement of his cause of action. The uncontroverted evidence also reveals that when Waltz sought medical relief for his symptoms, the doctors he consulted provided him with alternative diagnoses and treatments. His suspicions were quashed until sometime after October 22, 1985. The filing of his action within two years of that date was in compliance with the applicable statute of limitations. This evidence, viewed in a light most favorable to the Manufacturers, establishes that there is no genuine issue of material fact on the statute of limitations issue. Accordingly, the trial court properly determined that Waltz was entitled to judgment as a matter of law on that issue.

The Manufacturers' petition for rehearing is denied.

ROBERTSON and MILLER, JJ., concur.

---

1. The Manufacturers filed a motion for summary judgment based on statute of limitations grounds. Waltz did not file a counter motion. The trial court, pursuant to its authority under T.R. 56(B), denied the Manufacturers' motion and entered summary judgment in favor of Waltz on the statute of limitations issue.