**ALLIED RESIN CORPORATION,**
Conap, Inc., Synair Corp.,
Appellant,

v.

Barry J. **WALTZ,** Appellee.

No. 06S01–9107–CV–539.

Supreme Court of Indiana.

July 11, 1991.

Norman T. Funk, Hill Fulwider McDowell Funk & Matthews, Indianapolis, for Allied Resin Corp.

James L. Petersen, Donald M. Snemis, Ice Miller Donadio & Ryan, Indianapolis, for Synair Corp.

R. Robert Stommel, Lewis Bowman St. Clair & Wagner, Indianapolis, for Conap, Inc.

Rosemary G. Spalding, Price & Shula, Indianapolis, for Barry J. Waltz.

KRAHULIK, Justice.

The question presented in this case is whether the trial court properly applied the discovery rule in determining whether a strict liability in tort claim was timely filed. Allied Resin Corp., Conap, Inc. and Synair Corp. (Defendant–Appellants below, collectively "the chemical manufacturers") jointly seek transfer to this Court after the entry of summary judgment in favor of Barry Waltz (Plaintiff–Appellant below) was affirmed by the Court of Appeals. *Allied Resin Corp. v. Waltz* (1990), Ind. App., 559 N.E.2d 390. Because we find that a question of material fact exists, we accept transfer and reverse. The facts necessary for resolution of this issue follow.

From March 1982 until September 1984, Waltz was employed by Tedco, Inc., during which time Tedco was in the business of manufacturing polyurethane products. Waltz alleges that the chemical manufacturers produced and supplied various chemicals used in the manufacturing process. In August or September 1983, Waltz began to experience several symptoms, including headaches, shortness of breath, a loss of energy, a thick mucous drainage and a knot or lump in his throat. In October 1983, Waltz consulted with Dr. Jetmore, an ear-nose-throat specialist, about his symptoms. Dr. Jetmore concluded that Waltz's

condition was caused by a deviated septum, and prescribed a decongestant/antihistamine and a steroid nasal spray. Six weeks later, with no improvement in Waltz's condition, Dr. Jetmore performed surgery to correct the deviated septum. One month passed with no improvement; Dr. Jetmore then diagnosed the cause of symptoms as allergic in nature. Six months later, in June 1984, there was still no improvement in Waltz's symptoms and so he began to investigate the potential relationship between his symptoms and the chemicals. He began to suspect that his exposure to the chemicals and his symptoms were related because he had previously enjoyed good health and his symptoms began soon after he started making the polyurethane products at Tedco. At this time, Waltz returned to Dr. Jetmore and asked if his exposure to methylethylketone was causing his symptoms. Dr. Jetmore said that he did not know.

In July 1984, Waltz consulted with Dr. Erxleben, an internist, and told the doctor of his suspicions that his symptoms were caused by exposure to chemicals at work. Waltz gave the doctor material safety data sheets which contained information about the chemicals to which he had been exposed at work, including a list of symptoms which result from overexposure to the chemicals. Several of these symptoms matched those complained of by Waltz. Waltz requested blood tests to evaluate chemical exposure, but Dr. Erxleben could not locate a laboratory which could perform the tests. Dr. Erxleben prescribed decongestants. The evidence is conflicting as to the remaining events of that consultation. Dr. Erxleben testified at his deposition that he told Waltz that his symptoms were "possibly caused" by exposure to chemicals. Waltz claims that the doctor did not make these comments.

In early 1985, because his symptoms persisted, Waltz was referred by Dr. Jetmore to Dr. Johnson. Dr. Johnson determined Waltz was allergic to pollens, house dust, and mites, and concluded that Waltz's physical problems were caused by those allergies. Johnson prescribed allergy shots which Waltz took for a number of months.

In October 1985, with no improvement in Waltz's condition, Dr. Jetmore prescribed RAST tests to determine whether the cause of Waltz's complaints might be related to his chemical exposure at Tedco. When the results of those tests were inconclusive, Waltz was referred to Dr. Burnstein for further testing. Dr. Burnstein concluded Waltz's symptoms were related to his exposure to the chemicals.

Waltz filed his original complaint against the chemical manufacturers approximately one year and eight months after being told by Dr. Burnstein of the causal relationship but more than three years after his appointment with Dr. Erxleben. In his amended complaint, Waltz sought recovery from the chemical manufacturers on theories of negligence and strict liability in tort. Waltz also alleged fraud against Meyer and fraudulent concealment against Synair. The chemical manufacturers filed motions for summary judgment on the grounds that Waltz's claims were barred by the applicable statute of limitations. The trial court denied the chemical manufacturers' motions for summary judgment and, instead, granted summary judgment on the statute of limitation issue in favor of Waltz pursuant to Ind. Trial Rule 56(B). The chemical manufacturers appealed to the Court of Appeals, which affirmed the trial court's entry of summary judgment. *Allied Resin Corp. v. Waltz,* 559 N.E.2d 390.

■ Before we address the contentions of the chemical manufacturers, we recite the oft-repeated litany concerning appellant review of summary judgments. We apply the same standard applicable to the trial court: Only if the pleadings and evidence sanctioned by T.R. 56(C) show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law should summary judgment be granted. T.R. 56; *Cullison v. Medley* (1991), Ind., 570 N.E.2d 27, 28. Any doubt about the existence of a fact or the reasonable inference to be drawn from it is to be resolved in favor of the non-moving party.

In this case, then, we resolve any doubts in favor of the chemical manufacturers.

 Waltz's claims against the chemical manufacturers are governed by the following statute of limitation in effect at the time he filed his complaint: "Any product liability action in which the theory of liability is negligence or strict liability in tort must be commenced within two years after the cause of action accrues...." IND.CODE § 33–1–1.5–5(a). This statute does not indicate when an action "accrues". That was decided by this Court in *Barnes v. A.H. Robins Co.* (1985), Ind., 476 N.E.2d 84, where we adopted a discovery rule applicable to injuries caused by a condition which may be the result of a protracted exposure to a product. In *Barnes*, we stated that the statute of limitations in such causes commences to run from the date the plaintiff knew or should have discovered that she suffered an injury or impingement, and that it was caused by the product or act of another. *Id.* at 87–88.

The chemical manufacturers claim that Waltz knew or should have discovered that his alleged injury was caused by his exposure to chemicals at work immediately following his 1984 visit to Dr. Erxleban. This claim rests on the doctor's testimony that he told Waltz during that consultation that his symptoms were "possibly caused" by exposure to chemicals. Thus, petitioners urge us to conclude that the statute of limitations expired in 1986, one year before the original complaint was filed. Waltz, on the other hand, claims that Dr. Erxleban did not make these comments to him, and claims that the limitation period did not begin running until after he had been seen by Dr. Burnstein some time after October 22, 1985. *Barnes* specifies an either/or test to determine when a cause of action accrues in such cases, viz, when the plaintiff *either* "knew" *or* "should have discovered." Applying this test to the record here leads us to conclude that Waltz did not "know" of the causal relationship between his injury and the chemical products until Dr. Burnstein's affirmative diagnosis in early 1986. However, we also conclude that there is a genuine issue of material fact about whether Waltz "should have discovered" the causal connection between his injury and his exposure to the chemicals in 1984 or at some later time. We cannot say when, as a matter of law, the limitation period began running because the evidence relevant to when Waltz "should have discovered" the causal connection is in conflict. This fact-sensitive question is appropriate for resolution by a jury with appropriate instruction from the trial court. *Montgomery v. Crum* (1928), 199 Ind. 660, 668, 161 N.E. 251, 258–59; *Ketcham v. Hill* (1873), 42 Ind. 64, 81. Also, *see generally* 19 I.L.E. Limitations of Action § 120. The entry of summary judgment in view of this factual question was erroneous.

Accordingly, we now grant transfer, vacate the opinion of the Court of Appeals, reverse the judgment of the trial court, and remand this cause to the trial court for further proceedings.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.